**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YASHANDA SCRUGGS,<br>    Plaintiff<br>v.<br>JOHNS HOPKINS UNIVERSITY,<br>    Defendant | Civil Action No. 23-1976 (CKK) |

**MEMORANDUM OPINION**
(March 5, 2026)

Pending before this Court is a motion for summary judgment by Defendant Johns Hopkins University ("Defendant" or "JHU") and an opposition by Plaintiff Yashanda Scruggs ("Plaintiff" or "Ms. Scruggs"). Ms. Scruggs was employed by JHU as Director of Student Success from March 2021 until the termination of her employment on November 17, 2021. Due to the COVID-19 pandemic, JHU was operating completely remote during the first several months of Ms. Scruggs' employment. Subsequently, Ms. Scruggs was scheduled to return to work in-person at Defendant's Washington, D.C. campus on August 21, 2021; however, she had a seizure several months prior thereto, and as a result, she was prohibited from driving through September 2021. Consequently, Ms. Scruggs requested that she be allowed to work from home until her driving restriction ended, and JHU granted that request.

Thereafter, Ms. Scruggs reported having a second seizure in September 2021, and she requested to be able to continue working from home until March 2022, but that request was denied by JHU. Accordingly, Ms. Scruggs' accommodation agreement expired on September 30, 2021, and she was expected to report to work five days a week immediately thereafter. Ms. Scruggs failed to do so, instead reporting to work on most Mondays and Thursdays, and calling out sick on many Tuesdays, Wednesdays, and Fridays throughout October and November 2021. In early

1

September 2021, and again in late October/early November 2021, JHU notified Ms. Scruggs regarding the need for her to improve performance of her work duties. Furthermore, she was counseled about her work attendance, but she continued to be absent approximately three days a week until JHU terminated her employment on November 17, 2021.

Ms. Scruggs alleges that JHU discriminated against her because of her race, sex, and disability by terminating her employment. She alleges further that JHU failed to accommodate her disabilities – a seizure disorder and a mood disorder– and terminated her employment in retaliation for her seeking accommodations and filing a complaint against one of her supervisors, Veronica Donahue.

JHU asserts that it was only informed by Ms. Scruggs that she was seeking accommodations for a seizure disorder (as opposed to a seizure disorder _and_ a mood disorder). When Ms. Scruggs' condition could not be accommodated in the manner requested by her, Ms. Scruggs stopped coming to work three days out of the week, and when absent, she did not perform work, which meant that students were not being served. JHU indicates that it needed a Director of Student Success who was fully engaged to work on behalf of Advanced Academic Programs ("AAP") students, and Ms. Scruggs was not performing her work functions in a satisfactory manner or coming to work on a regular basis. Ultimately, JHU terminated Ms. Scruggs' employment.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record in this case, the Court shall GRANT JHU's Motion for Summary Judgment because Defendant JHU has

---

[1] The Court's consideration has focused on the following documents and the exhibits attached thereto: (1) Defendant's [21] Motion for Summary Judgment ("Def.'s Mot."), Defendant's [21-1] Memorandum in support thereof ("Def.'s Mem."), and Defendant's [21-2] Statement of Material Facts Not in Dispute ("DSoF"); (2) Plaintiff's [22] Opposition to

offered a legitimate, non-discriminatory reason for terminating Plaintiff Yashanda Scruggs' employment, which Ms. Scruggs has failed to rebut with sufficient evidence to demonstrate discriminatory pretext or retaliation. Nor is there any genuine issue of material fact regarding Plaintiff's claim that JHU failed to provide a reasonable accommodation because Ms. Scruggs neither provided notice of her mood disorder to JHU nor did she request a reasonable accommodation.

## I. BACKGROUND

### A. Procedural Background

Plaintiff filed her [1] Complaint in this action on July 10, 2023, and Defendant filed its [5] Answer on August 2, 2023. On October 13, 2023, this Court held an initial scheduling conference, followed by its issuance of a Scheduling and Procedures Order, ECF No. 10. The Court set an October 31, 2023 deadline for filing of a joint discovery plan, with all discovery due by April 10, 2024. On April 10, 2024, Plaintiff filed her Motion to Take Depositions Outside of Discovery, requesting permission to depose two Rule 30(b)(6) witnesses – Ms. Veronica Donahue and Mr. David Brant – out of time. After the parties fully briefed that motion, this Court denied Plaintiff's motion on grounds that "Plaintiff's explanation for her delay fail[ed] to satisfy the good cause standard, as Plaintiff failed to diligently conduct discovery in this case with the hopes that

---

Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), Plaintiff's [22-1] Memorandum in support thereof, ("Pl.'s Mem."), Plaintiff's [22-2] Response to Defendant's Statement of Material Facts Not in Dispute ("RDSoF"), Plaintiff's [22-3] Statement of Material Facts in Dispute ("PSoF"); and (3) Defendant's [25] Reply in support of Summary Judgment ("Def.'s Reply") and Defendant's [25-1] Response to Plaintiff's Statement of Material Facts in Dispute ("RPSoF").

In its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

Defendant would accept a settlement offer, even after Defendant made it clear that it would not settle at this time." Order, ECF No. 19, at 3-4.

Pending before this Court is JHU's instant motion for summary judgment. In connection with Plaintiff's Opposition, she attached the Declaration of Tammy Peery as an exhibit. JHU moved to strike the Peery Declaration on grounds that Ms. Peery had not been identified as a potential witness. On February 12, 2026, this Court granted Defendant's motion to strike the Peery Declaration, concluding that Plaintiff had not demonstrated a substantial justification for failing to disclose Ms. Peery as a witness and that such late disclosure was not without harm to JHU. Mem. Op. and Order, ECF No. 29. Accordingly, that issue having been resolved, Defendant's motion for summary judgment is now ripe for review by this Court.

### B. Factual Background

Plaintiff Yashanda Scruggs is an African American woman and a Virginia resident. DSoF ¶ 1.[2] Defendant Johns Hopkins University ("JHU"), with its Krieger School of Arts and Sciences,

---

[2] In resolving the present motions, this Court "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1). Thus, in most instances the Court shall cite to Defendant's Statement of Material Facts Not in Dispute, ECF No. 21-2 ("DSoF") (without referencing the underlying exhibits cited) unless Plaintiff objects to relevant aspects of a fact proffered by Defendant. In such instances, the Court shall also cite to Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute, ECF No. 22-2 ("RDSoF") or otherwise indicate that the fact is disputed. The Court shall also cite directly to the record, where appropriate.

In this case, Plaintiff filed a Statement of Material Facts in Dispute, ECF No. 22-3 ("PSoF"), but the "facts" alleged therein are either immaterial; *see* PSoF ¶ 8 (Ms. Scruggs acknowledges that she understood that the pandemic would end and people would return to work, but states that she was never told that during the hiring process), PSoF ¶ 5 (Ms. Donahue repeatedly mispronounced Plaintiff's first name), or they are conclusions that rely on the stricken Peery Declaration for support, PSoF ¶¶ 1-4, 6-7, 9-10, 17-24, or they are contradicted by the record in this case as explained in this Memorandum Opinion, PSoF ¶¶ 12-16 (allegations that relate to JHU being on notice of Plaintiff's mood disorder).

offers part-time graduate degrees targeted at working adults, through its Advanced Academic Programs ("AAP").  *Id.* ¶ 2.

### 1. Plaintiff's Application, Hiring, and Position

In either December 2020 or January 2021, Ms. Scruggs applied for a senior leadership position as Director of Student Success with JHU's AAP.  *Id.* ¶¶ 8, 14.  After interviewing with multiple JHU employees – including Veronica Donahue and David Brant – Ms. Scruggs was offered employment on February 22, 2021.  *Id.* ¶¶ 9-10; *see* Offer Letter, Def.'s Ex. 5 (indicating that the standard work schedule was "Monday-Friday, 8:30 am – 5:00 pm, Up to 37.5 hours /week").  Ms. Scruggs' responsibilities as Director of Student Success included: (1) Orientation and ongoing community programming; (2) Academic success; (3) Professional success; (4) Disability support services; and (5) Student conduct.  DSoF ¶ 13.

### 2. JHU moves from remote to in-person

When Ms. Scruggs was hired, the AAP program, like the rest of JHU, was being conducted remotely due to the COVID-19 pandemic, but she understood that, eventually, AAP and JHU would return to campus.  DSoF  ¶¶ 11-12.  In the summer of 2021, JHU began planning to return to campus in person for fall semester 2021, and administrators were instructed  to develop a plan for their departments with respect to in-person attendance.  *Id.* ¶¶ 31-32.  Veronica Donahue, who was the Associate Dean for Graduate and Professional Programs, developed a plan for AAP to return to campus, which included a designation of which roles would be in-person and which would be hybrid.  *Id.* ¶¶ 3, 32.  As Director of Student Success, Plaintiff reported to Ms. Donahue.  Donahue Declaration ("Decl.")., Def.'s Ex. 2 ¶ 8.  Ms. Donahue designated both the Director of Student Success (Ms. Scruggs' position) and the Senior Student Services Coordinator (Ms. Talia

Varone's position, which reported to the Director of Student Success) to be in-person, five days a week.  DSoF ¶¶ 15, 33; *see also* Donahue Decl. ¶ 8 (characterizing these two positions as "student-facing").[3]

### 3. Plaintiff's Seizures and Requests for Accommodation

In February or March 2021, Ms. Scruggs suffered a seizure for the first time, and she was diagnosed subsequently with a seizure disorder and started treatment with Dr. Mohankumar Kurukumbi. *Id.* ¶ 16. Consistent with Virginia law, she was prohibited from driving for six months from the date of her seizure. *Id.* ¶ 17; *see* June 28, 2021 Doctor's Note, Def.'s Ex. 10 (indicating that based on the doctor's "evaluation . . . [of her] current medical condition she will not be able to drive until the end of September").

### a. First Accommodation Request

On or about July 13, 2021 – after AAP had announced its return to campus – Ms. Scruggs submitted an accommodation request to JHU's Office of Institutional Equity (the "First Accommodation Request"), and in that request, Ms. Scruggs wrote: "Due to my medical condition, driving is not currently permitted, and current commuting options negatively impact my physical and mental wellbeing beyond reasonable acceptance."  DSoF ¶¶ 34-35; First Accommodation Request, Ex.9.  This First Accommodation Request was accompanied by the June 28, 2021 Note from Plaintiff's physician, Dr. Kurukumbi, which requested that, "if feasible," she be permitted to telework until the end of September 2021.  DSoF ¶ 36.

JHU accommodated Ms. Scruggs' condition by permitting her to work remotely through the end of September.  As part of Ms. Scruggs' August 2021 Workplace Accommodation

---

[3] Of the forty-five employees who reported to Ms. Donahue, she also "designated fourteen others as in-person five days a week."  Donahue Decl., Def.'s Ex. 2 ¶ 9.

Agreement, while working remotely, she was expected to "coordinate any in-person supports" and "would work onsite when requested by [her] supervisor on an as needed basis." Workplace Accommodation Agreement, Def.'s Ex. 11.

### b. Second Accommodation Request

Ms. Scruggs suffered a second seizure in September 2021, and she submitted a second request for accommodation on or about September 27, 2021. DSoF ¶¶ 41-42. In her Second Accommodation Request, Ms. Scruggs stated that:

> Due to my medical condition, driving is not currently permitted, and current commuting options negatively impact my physical and mental well-being beyond reasonable acceptance.
>
> *               *               *
>
> My current health condition does not allow me to drive. Working around this limitation due to my disability has caused additional stress, which aggravates my condition. To avoid these stressors, adjust to a revised dosage in medication and promote healthy sleep patterns needed to make sure my condition is in control, I request to telework until I am no longer under these limitations, which is now anticipated to be March 2022.

Second Accommodation Request, Def.'s Ex. 12. The March 2022 date corresponds to the six-month limitation in being able to drive after suffering a seizure. The Second Accommodation Request was accompanied by Dr. Kurukumbi's September 15, 2021 Note stating that Ms. Scruggs' seizure "was clearly triggered by stress and lack of sleep" and further, that Ms. Scruggs should continue her increased dose of seizure medication and should not drive for six months from the time of the seizure and should "[a]void seizure triggers like stressful environment [and] lack of sleep." September 15, 2021 Doctor's Note, Def.'s Ex. 13.

Ms. Scruggs' Second Accommodation Request was reviewed by JHU ADA Compliance Office Aaron Hodukavich, who asked the department whether Ms. Scruggs could be accommodated by working remotely five days a week for the following six months, but the

department informed Mr. Hodukavich that working in-person was an essential function of Plaintiff's role, and they could not accommodate her request. DSoF ¶¶ 48-49. This was "especially so because AAP was going to be implementing new COVID-19 testing requirements at the beginning of October." Hodukavich Declaration ¶ 12; *see also* October 4, 2021 email from Mr. Hodukavich to Ms. Scruggs, Hodukavich Decl. Attachment C (informing Plaintiff that her request was denied and noting that "[t]he Director of Student Success is a student facing position with numerous responsibilities onsite" and that with the "new testing requirements being implemented this week," Mr. Hodukavich had been informed that there was "an even greater need for this position to be onsite").

More specifically, when JHU returned to campus in the fall of 2021, students were required to have proof of COVID-19 vaccination and many AAP (international) students had to be re-vaccinated, undergo weekly testing, and test negative, before they were permitted to attend class in person, and this testing protocol was Ms. Scruggs' responsibility. DSoF ¶¶ 50-51. Mr. Hodukavich inquired also (on Ms. Scruggs' behalf) as to whether JHU had any remote positions available for which Ms. Scruggs was qualified, but he was informed that there were not. *Id.* ¶ 53. Accordingly, Ms. Scruggs' accommodation remained scheduled to expire at the end of September 2021.

In response to the denial of the Second Accommodation Request, Ms. Scruggs neither provided JHU with additional information about commuting and/or her restrictions nor did she propose any potential alternate accommodation – such as changing her schedule —other than telework. DSoF ¶¶ 54-55.

8

### 4. Job Performance

### a. Ms. Donahue was Plaintiff's Supervisor until September 3, 2021

On or about August 26, 2021 – while Ms. Scruggs was working remotely pursuant to her First Accommodation Request – Ms. Donahue informed Ms. Scruggs that the Office of Student Success needed to be present on campus the following week given that students were returning to campus to start fall semester. Donahue Decl. ¶ 10. Furthermore, Ms. Donahue informed Ms. Scruggs that Maria Mendez, Manager of Administrative Services, and Haydn Kuprevich, Executive Director of Marketing and Communications, were handling a return to campus welcome for students which was the responsibility of Student Success, and that Ms. Mendez had been fielding calls to Ms. Scruggs' office because Ms. Scruggs had failed to set up her office phone so that staff and students could contact her. DSoF ¶¶ 65-67; *see* August 26, 2021 email from Ms. Donahue to Ms. Scruggs, Donahue Decl. Attachment B (which begins by thanking Ms. Scruggs for her energy and enthusiasm regarding that afternoon's NSO, before voicing the concerns noted above).

In September 2021, Ms. Donahue met with Ms. Scruggs and discussed her performance, and by email dated September 3, 2021, Ms. Donahue noted that Ms. Scruggs had: (1) failed to hire a Conduct Officer even though it was approved by FHU in March 2021; (2) failed to communicate with AAP students regarding the start of the semester, leaving other employees and divisions to answer student questions; (3) distributed communications that contained errors; (4) failed to prepare a student welcome, leaving other members of senior leadership and divisions to prepare welcome materials; (5) failed to communicate with students and campus security during a severe weather emergency; and (6) failed to advance the advising system for AAP faculty. DSoF ¶ 68.

To "assist [Plaintiff] to focus on priority issues," Ms. Donahue removed several responsibilities from Ms. Scruggs, including Disability Services. Donahue Decl. ¶ 14. Ms. Donahue also changed Ms. Scruggs' supervisors, with Mr. Brant becoming Ms. Scruggs' general supervisor and Ms. Peery becoming Ms. Scruggs' supervisor with respect to Student Conduct only. DSoF ¶ 69; *see also* September 3, 2021 counseling email from Ms. Donahue to Ms. Scruggs, Def.'s Ex. 14 (notifying Ms. Scruggs of the six concerns and indicating the organizational changes).

That September 2021 counseling email was part of JHU's progressive counseling procedures. Donahue Decl. ¶ 13. JHU's Progressive Counseling Procedure may be used to correct a staff member's performance, and may include verbal counseling, written counseling, suspension, suspension pending review for termination, and involuntary termination. DSoF ¶ 76. Ms. Scruggs is not aware of any JHU employees who received progressive counseling during her employment. Scruggs' Deposition Excerpts, Def.'s Ex. 1, at 175:6-13, 176:11-17.

Ms. Scruggs contends that she disputed these six concerns expressed by Ms. Donahue, but there is no information in the record to support this claim other than her general statement that she disagreed with all six concerns. *See* Scruggs' Dep. Excerpts, Pl.'s Ex. 2, at 256:2-8 (Q: All right. And which specific ones did you disagree with? A: 1, 2 - - - I don't know her reference about 3, so I would object to 3, 4, 5, and 6). On or about September 8, 2021, Ms. Scruggs submitted a complaint against Ms. Donahue, alleging discrimination, harassment, bullying, and retaliation, to JHU's Office of Institutional Equity ("OIE"), but OIE concluded that the complaints did not constitute a hostile work environment and closed Ms. Scruggs' complaint in October 2021. DSoF ¶¶ 102-103.

### b. Mr. Brant became Plaintiff's Supervisor as of September 3, 2021

As of September 3, 2021, Mr. David Brant became Ms. Scruggs' general supervisor. DSoF ¶ 69. At that point, Student Success had not hired the four to six employees listed in Ms. Scruggs' job description and was short-staffed. Ms. Scruggs alleged that she was in the process of hiring one person to handle student conduct matters. *Id.* ¶ 72.

Mr. Brant also counseled Ms. Scruggs regarding her performance. By email dated October 6, 2021, Mr. Brant notified Ms. Scruggs of issues that were "problematic" including that: (1) she had taken unscheduled and unapproved vacation days that required canceling and rescheduling student appointments; (2) she had worked remotely on two occasions despite being instructed to work in-person; (3) she had failed to communicate with AAP students and stakeholders such that her duties were being reassigned to other AAP staff; and (4) she had failed to coordinate in-person supports for students when she was not in office. *Id.* ¶ 73; *see* October 26, 2021 counseling email from Mr. Brant to Ms. Scruggs, Def.'s Ex. 17 (outlining these and other performance issues and noting that it was Ms. Scruggs' second formal warning).[4]

### c. Ms. Scruggs' Attendance

After Ms. Scruggs' Second Accommodation Request was denied, she was absent on October 5, 6, 7, 8, 12, 13, 15, 19, 20, 22, 26, 27, 29; and on November 5, 9, 11, 12, 16, and 17. Id. ¶ 78. Ms. Scruggs alleges that absences on October 5, 6, 8, 12, 15, 22, 26, and 27; and November 3, 5, 9, 11, 12, 16, and 17 were due to illness. *Id.* ¶ 82. When she was going to be absent due to

---

[4] Plaintiff acknowledges that the email speaks for itself but disputes the accuracy of concerns regarding her performance, RDSoF ¶ 73; however, the support provided by Plaintiff only cursorily addresses front office coverage (the fourth concern). *See* Pl.'s Dep. Excerpts, Pl.'s Ex. 2, at 211:2-13 (stating that "the front office is kind of a separate and apart thing just from welcome week [b]ut David Brant and Tammy Peery had persons that were already identified to cover the front period, so that was already in play by the time of this meeting). The Court notes that Ms. Scruggs could not recall who these individuals were. Ex. 2, at 211: 16-22.

11

illness, Ms. Scruggs emailed Mr. Brant, stating only that she was unwell, without otherwise identifying her illness. *Id.* ¶ 85. Plaintiff acknowledged that she was counseled regarding her absenteeism. DSoF ¶ 86.

Every time Ms. Scruggs failed to report to work, she canceled her scheduled meetings with students. *Id.* ¶ 91. Because both the AAP and the COVID-19 testing protocol were new in fall 2021, students regularly went to AAP's office needing help to manage the testing process. The volume of visits was highest in October and then decreased through each of November and December, *id.* ¶ 87. Those visits were disruptive to Ms. Scruggs' colleagues, who stopped to assist the students and escort them to the testing location. *Id.* ¶ 88; *see also* Brant Decl., Def.'s Ex. 3, ¶ 18 ("I personally escorted a student to the testing location at least once a day.")

Mr. Brant indicated additionally that Ms. Scruggs was supposed to contribute to a working group tasked with putting together the advising technology for Krieger's AAP, but her frequent absences impeded her ability to contribute to that group. Brant Decl. ¶¶ 6-8. Furthermore, on November 4, a parent of an AAP student called and left a message that her child was in critical care, and while Ms. Scruggs attempted to return the call, it was Mr. Brant who spoke to the student's mother. *Id.* ¶ 9. According to Mr. Brant, "Ms. Scruggs "took no steps to initiate proactive support for the student, including failing to access the student's emergency contact records," and Ms. Scruggs was then absent on November 5, 2021, followed by the weekend. *Id.* ¶ 10.

JHU terminated Ms. Scruggs' employment on or about November 17, 2021. DSoF ¶ 92. Mr. Brant indicated that it was his decision to terminate Ms. Scruggs' employment. Brant Decl. ¶ 12. The termination letter notes that Mr. Brant and Ms. Scruggs had met on November 4, 2021 "to discuss [her] required onsite status and the requirements of [her] work schedule." *See*

12

November 17, 2021 Termination Letter, Def.'s Ex. 18 ("As you have been unwilling or unable to report to work on campus as required, we have no choice but to end your employment.").

In her Complaint in this case, Plaintiff notes that she "filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 23, 2021" and that she was notified, on April 11, 2023, that she could file a civil action within ninety days. Compl., ECF No. 1 ¶¶ 31-32.[5] Plaintiff filed this civil action on July 10, 2023.

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis

---

[5] Neither party provided the Court with a copy of the EEOC complaint. The Court notes that Defendant does not contest that Plaintiff exhausted her administrative remedies.

in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009); *see also Sibert-Dean v. Wash. Metro. Transit Auth.*, 751 F. Supp. 2d 87, 90 (D.D.C. 2010) (requiring the non-moving party's factual representations in an affidavit to be supported by facts in the record). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). The district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

In recognition of the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, the district court should approach summary judgment in an action for employment discrimination or retaliation with "special caution." *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879–80 (D.C. Cir. 1997), *vacated on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*).

14

But the Court's "special caution" does not relieve the plaintiff of her burden to support her allegations with competent evidence. *See Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009). As in any context, where the plaintiff would bear the burden of proof on a dispositive issue at trial, at the summary judgment stage she bears the burden of production to designate specific facts showing that there exists a genuine dispute requiring trial. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). Otherwise, the plaintiff could effectively defeat the "central purpose" of the summary judgment device—namely, "to weed out those cases insufficiently meritorious to warrant . . . trial"—simply by way of offering conclusory allegations, speculation, and argument. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## III.   DISCUSSION

Plaintiff's claims may be summarized as follows: (1) failure to accommodate under the ADA, with respect to her Second Accommodation Request (Count Three); (2) discrimination under the ADA (Count One) and under Title VII (race and gender) (Counts Four and Five); and (3) retaliation under the ADA. The Court will begin by considering Plaintiff's failure to accommodate claim, followed by her discrimination and retaliation claims.

### A. Failure to Accommodate Claim

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a), where discrimination includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. §12112(b)(5)(A). To demonstrate a failure to accommodate claim, Plaintiff must show that: (1) she was a qualified individual with a disability; (2) the employer had notice of her disability; and

(3) the employer denied her request for a reasonable accommodation.[6] *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1371 (D.C. Cir. 2020) (Kollar-Kotelly, J.) (citing *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014)); *see* 42 U.S.C. § 12112(a) (setting forth the general rule on discrimination), 42 U.S.C. § 12112 (b)(5)(A) (noting that discrimination on the basis of disability includes not making reasonable accommodations, "unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business").

In this case, Ms. Scruggs requested two accommodations, both for permission to work 100% remotely, and both based on her seizure disorder and accompanying inability to drive, although she claims that JHU was on notice that she had a mood disorder as well. Ms. Scruggs' First Accommodation Request was granted by JHU, with the effect that she was able to work remotely through September 30, 2021. Because this period of remote work overlapped with JHU's return to in-person, Ms. Scruggs agreed to "coordinate any in-person supports needed" during this time and to "work onsite when requested" to do so by her supervisor. August 2021 Accommodation Agreement, Def.'s Ex. 11. Plaintiff's Second Accommodation Request –for an additional six months of remote work, until March 2022 – was denied, on grounds that "in-person attendance was an essential function of her position," and especially regarding the newly implemented COVID-19 testing requirements for AAP students. Hodukavich Decl. ¶12.

Plaintiff claims that there are disputed issues of material fact related to the denial of her Second Request for accommodation that preclude summary judgment. First, Plaintiff claims that

---

[6] In its Motion, when discussing Plaintiff's failure to accommodate claim, Defendant notes that "[f]or the sake of this motion only, JHU will assume that Scruggs was a qualified individual" but "reserves the right to argue at trial that Scruggs was neither qualified nor had a disability as defined by the ADA." Def.'s Mem., ECF No. 21-1, at 23 n.3.

16

JHU was on notice of her mood disorder, as well as her seizure disorder. Second, Plaintiff claims that in-person attendance was not an essential function of her position, with the effect that her job could have been performed if she had received an accommodation that permitting remote work. As analyzed below, the Court finds that the record makes clear beyond genuine dispute that JHU was not on notice of Plaintiff's mood disorder, nor could Plaintiff perform essential functions of her job while working 100% remotely.

### 1. Whether Plaintiff Provided Notice of her Mood Disorder

While JHU acknowledges in its Statement of Undisputed Material Facts that, as per her deposition testimony, Plaintiff is (or was) being treated for a mood disorder, DSoF ¶ 20 (citing Scruggs' Dep. Excerpts). JHU disputes however that it was aware of this mood disorder at the time that plaintiff made her Second Accommodation Request, and Plaintiff has acknowledged that she never (directly) informed anyone at JHU that she had a mood disorder." DSoF ¶ 59. Rather, Ms. Scruggs argues that JHU was "on notice" of her mood disorder because she "informed Defendant about her anxiety in her initial application [for accommodation] to OIE and Defendant never asked her for more information." PSoF ¶ 14. This Court finds that Plaintiff's argument is unsupported by record evidence.

In her First Accommodation Request, Ms. Scruggs wrote: "Due to my medical condition, driving is not currently permitted, and current commuting options negatively impact my physical and mental wellbeing beyond reasonable acceptance." First Accommodation Request, Def.'s Ex. 9. The Court notes, first, that this statement by Plaintiff does not provide notification of anxiety, much less a mood disorder. Second, according to Plaintiff's own testimony, Scruggs Dep., Def.'s Ex. 1, at 100:1-13, her mood disorder was not diagnosed until after her second seizure in September 2021. As this First Accommodation Request predates that second seizure, by her own

testimony, Plaintiff had not yet been diagnosed with a mood disorder. Accordingly, she could not expect JHU to be on notice of a mood disorder prior even to her diagnosis. Third, the Court notes that Plaintiff utilized this same language about her mental wellbeing in her Second Accommodation Request. And, in both, she requested accommodations of six-months of remote work, which corresponds to the timing for when she was restricted from driving due to the seizure. A reasonable jury could conclude therefore that Plaintiff's requested accommodations were based on the driving restrictions resulting from her <u>seizure disorder</u>.

Plaintiff asserts however that JHU was "on notice" of her mood disorder because, in her Second Accommodation Request, she indicated that "[w]orking around this [driving] limitation due to my disability has caused additional stress, which aggravates my condition." Second Accommodation Request, Def.'s Ex. 12.[7] The Court notes however that Plaintiff's statement about stress is consistent with the accompanying Note by Dr. Kurukumbi, which indicates that Plaintiff's <u>seizure disorder</u> "was clearly triggered by stress and lack of sleep," and she should avoid <u>seizure triggers</u> like a "stressful environment." Sept. 15, 2021 Doctor's Note, Def.'s Ex. 13. Accordingly, while JHU was perhaps "on notice" that Plaintiff should avoid stress and get adequate sleep (in connection with her seizure disorder), it is a giant leap to get from there to the conclusion that JHU was aware that Plaintiff had a mood disorder, and more particularly that this disorder made it difficult for her to use public transportation.

Moreover, Ms. Scruggs acknowledged that she did not tell anyone at JHU, including Mr. Hodukavich, about incidents involving public transportation that made her anxious. Scruggs Dep.,

---

[7] The Court notes that Plaintiff's cryptic reference to "additional stress from working around a driving limitation" could be interpreted any number of ways including that it was stressful for her to figure out the local bus schedule, or to try to arrange a carpool, or to build extra time into her commute in case there was a delay on the subway, without rising to the level of Ms. Scruggs being unable to use public transportation because of debilitating stress.

18

Def.'s Ex. 1, at 119:14-120:9, 225:15-22. After going to campus on August 30, 2021, and allegedly suffering from "a very negative" experience, Plaintiff told Mr. Hodukavich only that commuting to the office had an "adverse effect" on her health, without further explanation. *Id.* at 253:19-255:4.

Nor did JHU's ADA Compliance Officer Aaron Hodukavich, "interpret [Plaintiff's] Second Accommodation Request to disclose a second health condition of any kind including a mood, depressive, or anxiety disorder." Hodukavich Decl. ¶ 15.[8] "[I]n speaking with [Ms.] Scruggs about her need for accommodation, she told [him] only that working onsite was not feasible with her driving restriction in place," and he "understood only that she had a seizure condition." *Id.* ¶¶ 15-16; *see also* September 30, 2021 email from Hodukavich to Scruggs, Hodukavich Decl. Attachment D. Mr. Hodukavich attests that he "did not understand that [Ms.] Scruggs suffered from any condition that prevented her from using public transportation" and "expected that if [Ms.] Scruggs needed to travel to work, she would make arrangements just like any other employee who does not drive." Hodukavich Decl. ¶ 17. Moreover, he notes that, after the denial of her Second Accommodation Request, Ms. Scruggs did not provide any additional information or make any further requests. *Id.* ¶ 19.

Plaintiff contends that "the employee need not apprise the employer of "specifics," such as her impairment's name, diagnosis, or treatment." Pl.'s Mem., ECF No. 22-1, at 21 (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F. 3d 296, 314 (3d Cir. 1999)). JHU indicates however that it is "not suggesting that Scruggs need to provide 'precise notice" to be accommodated." Def.'s Mem., ECF No. 21-1, at 26; *Floyd v. Lee*, 85 F. Supp. 3d 482, 508 (D.D.C. 2015). Rather, JHU argues

---

[8] Mr. Hodukavich indicates that he only learned of Ms. Scruggs' alleged mood disorder after her employment ended and she filed her Charge of Discrimination. Hodukavich Decl. ¶ 18.

19

that where, as in this case, it "had already accommodated one health condition and Scruggs was requesting an extension of that accommodation," Ms. Scruggs "failed to provide JHU an 'adequate, prior alert' of a second condition." Def.'s Mem., ECF No. 21-1, at 26-27; *see Crandall v. Paralyzed Veterans of America*, 146 F.3d 894, 898 (D.C. Cir. 1998) (affirming summary judgment for the employer where the plaintiff claimed that his rude behavior was so extreme as to afford notice of his disability, but D.C. Circuit found that "a layman cannot reasonably be expected to infer a psychiatric disorder merely from rudeness").

An "underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested – or at least made known his need for – an accommodation which the defendant-employer has denied." *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 202 (D.D.C. 2008) (internal quotation marks and citation omitted). While notice under the ADA need not be precise, it "must put the employer sufficiently on notice of the existence and nature of the disability." *Evans v. Davis Mem'l Goodwill Indus.*, 133 F. Supp. 2d 24, 27 (D.D.C. 2000), *aff'd*, 1 Fed. Appx. 3 (D.C. Cir. 2001) (per curiam). Based on the record in this case, this Court agrees with JHU that, in "choosing not to inform JHU that she was unable to take public transportation due to a second health condition, [Ms.] Scruggs failed to put JHU on notice of her second health condition," Def.'s Mem., ECF No. 21-1, at 27, and accordingly, Plaintiff's claim for failure to accommodate must fail on grounds that JHU had no notice of her mood disorder.

Plaintiff tries to shift the onus to JHU, noting that they "never asked her for more information," PSoF ¶¶ 14, 16, but JHU notes that, "[b]y law, JHU was prohibited from asking [Plaintiff] whether she had *any* disability or the nature or severity of such disability." Def.'s Mem., ECF No. 21-1, at 25 n.4. (citations omitted). Considering the record evidence submitted by both parties, this Court finds that, in her requests for accommodation, Plaintiff failed to make clear that

she was claiming any disability in addition to her seizure disorder, and that such disability limited her ability to use public transportation. "[C]ourts should look for signs of . . . failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary," and if a party is "missing information that can only be provided by one of the parties, the party withholding the information may be found to have obstructed the process." *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014) (citations omitted). Accordingly, in the instant case, the Court finds that Ms. Scruggs failed to provide notice of her mood disorder to JHU, and this issue of notice is not a genuine issue of material fact that would preclude summary judgment on Plaintiff's accommodation claim.

## 2. Whether Plaintiff Requested a Reasonable Accommodation

Even assuming *arguendo* that Plaintiff provided notice of both health conditions, JHU asserts that she "still cannot establish her claim for failure to accommodate because she never requested a reasonable accommodation." Def.'s Mem., ECF No. 21-1, at 28. A reasonable accommodation means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held . . . is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). In this case, Plaintiff did not require an adjustment to her work environment so that she could perform the functions of her job, but instead, she requested a modification of the location of her job because she alleges that she was unable to drive to and from JHU.

Defendant contends that because Plaintiff "does not and cannot dispute that driving was not an essential function of her job," consequently, she "cannot establish that she was entitled to an accommodation." Def.'s Mem., ECF No. 21-1, at 28; *compare Colwell v. Rite Aid Corp.*, 602

21

F.3d 495, 506 (3rd Cir. 2010) (finding that the ADA contemplates that employers may need to make reasonable shift changes in order to accommodate a disabled employee's disability-related difficulties in getting to work, and reversing summary judgment on an accommodation claim where an employee who was blind in one eye requested to work only day shifts) *with Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873 (10th Cir. 2021) (granting summary judgment in a case brought by an employee who became legally blind who requested a flexible schedule dependent on her ability to secure a ride). In *Unrein*, the Court concluded that:

> The [employer] has no obligation to permit this employee to work a flexible schedule just because he can no longer get to work the way he used to. Whether a transportation barrier is caused by broken car or legal blindness and unreliable rides, the analysis of an employer's obligation should not change if transportation is unrelated to an essential job function and not a privilege of employment.

*Id.* at 878-879.

In this case, Plaintiff asserts in a conclusory fashion that "[her] role at the University 'could have easily been performed 100% remotely for an extended amount of time to address an accommodation need like [Plaintiff's].'" PSoF ¶9 (relying on the Peery Declaration, which has been stricken); *see* RPSoF ¶9 (denying that this allegation is supported by competent evidence). Plaintiff cites also to a statistic in her Job Description, Def.'s Ex. 6, noting that 77% of AAP's approximately 5,000 enrollments were in the online programs. PSoF ¶ 11. The Court notes however that even if this is accurate, it leaves 23%, or approximately 1,150 students, who were in-person.

Furthermore, the Director of Student Success Job Description states that the Office of Student Success is to be "a hub connecting students to opportunities, individuals, and tools to support their success" and that the Director will supervise 4-6 staff positions, and *inter alia*, oversee "efforts related to advising and student support including but not limited to orientation and

22

ongoing community programming, student mental health support, academic advising, crisis management, disability support services, and tutoring." Def.'s Ex. 6.  The Director also manages the non-academic student conduct process and is responsible for ongoing training and support of faculty and staff in policies and procedures related to the Student Conduct Code. *Id.*  The Director further serves as "the senior administrator on-call for AAP for student-related emergencies." *Id.* On its face, the Director of Student Success position description envisions at least some in-person responsibilities.

Moreover, Plaintiff's unsupported allegation that her job could have been performed 100% remotely is directly contradicted by the Declarations of Ms. Donahue, Mr. Brant, and Mr. Hodukavich, and their email correspondence with Plaintiff, which provide discrete descriptions of work that Plaintiff needed to perform in-person and which indicate that Plaintiff was neither accomplishing all of the tasks of her job while working remotely – prior to September 30, 2021, the end of her First Accommodation – nor after the denial of the Second Accommodation Request, when she was absent approximately three days per week.   JHU indicates that by the time Ms. Scruggs made her Second Accommodation Request, circumstances had changed insofar as:

> 1. [Ms.] Scruggs had failed to perform all of the duties of the Director of Student Success remotely, including by failing to plan for an in-person return to campus at the beginning of classes and by leaving Ms. Mendez and Mr. Kuprevich to plan the welcome, and by leaving Ms. Mendez to manage the numerous phone calls from students because she had failed to set up her office phones. SoF ¶¶ 65-67. 2. AAP had implemented the new COVID-19 testing protocol which required that AAP's unvaccinated international students, who were still adjusting to a new campus in a new country, test for COVID-19 on a weekly basis prior to attending classes in person. SoF ¶¶ 50-51. Under the circumstances, Scruggs' obligation to work on campus could not be and was not eliminated.

Def.'s Mem., ECF No. 21-1, at 31.  Accordingly, the Court finds that the record in this case contradicts Plaintiff's allegation that her job could have been performed 100% remotely and consequently, that working remotely constitutes a reasonable accommodation.

23

Moreover, Defendant argues additionally that even if Ms. Scruggs had sought a reasonable accommodation that would allow her to perform an essential function of her job, she still cannot establish a claim for failure to accommodate. This is because she "failed to meet her obligations to participate in the interactive process" by withholding information and not suggesting any accommodation besides working 100% remotely. Def.'s Mem., ECF No. 21-1, at 31-32; DSoF ¶¶ 54-56. To arrive at a reasonable accommodation, "it may be necessary . . . to initiate an informal, interactive process with the [employee]. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that would overcome those limitations." 29 C.F.R. § 1630.2(o)(3)(2012). Plaintiff addresses this argument in one sentence, noting without further explanation that "Defendant never worked with Plaintiff in good faith." Pl.'s Mem., ECF No. 22-1, at 21.

Accordingly, because Defendant neither had notice of Plaintiff's mood disorder nor did Plaintiff request a reasonable accommodation or meet her obligations to participate in the interactive process, summary judgment is appropriate for JHU on Plaintiff's failure to accommodate claim.

## B. Discrimination Claims

Plaintiff claims that JHU discriminated against her in violation of the ADA and in violation of Title VII, based on race and gender. Because these claims are analyzed in the same manner, the Court will consider them together.

To demonstrate discrimination in violation of the ADA, a plaintiff "must prove that he had a disability within the meaning of the ADA, that he was 'qualified' for the position with or without a reasonable accommodation, and that he suffered an adverse employment action because of his disability." *Giles v. Transit Employees Fed. Credit Union*, 794 F. 3d 1, 5 (D.C. Cir. 2015) (quoting

24

*Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2001)); *see Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) ("[T]he two basic elements of a disability discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's disability.") [9] In the case, the adverse employment action was the termination of Ms. Scruggs' employment.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To prove a claim of discrimination under Title VII, a plaintiff must demonstrate that the actions taken by the employer were "more likely than not based on the consideration of impermissible factors," including race or gender. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal citation omitted).

Absent direct evidence of discrimination,[10] the plaintiff may indirectly prove discrimination pursuant to the tripartite burden-shifting articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Adeyemi*, 525 F.3d at 1226–27 (applying *McDonell Douglas* to an ADA claim). "[B]oth [the] ADA and DCHRA disability discrimination claims are analyzed

---

[9] Regarding Plaintiff's disability discrimination claim, JHU argues that Plaintiff's seizure disorder does not constitute a disability under the meaning of the ADA, on grounds that her condition did not substantially limit any of her major life activities. *See* Def.'s Mem., ECF No. 21-1, at 33-34. This contrasts with JHU's argument regarding Plaintiff's failure to accommodate claim. For purposes of its analysis, the Court assumes *arguendo* that Plaintiff's seizure disorder is a disability, as Plaintiff's claim fails on other grounds.

[10] "Direct evidence of discrimination is evidence that, if believed by the factfinder, proves the particular fact in questions *without any need for inference*." *Brown v. Small*, 437 F. Supp. 2d 125, 130 n.7 (D.D.C. 2006) (emphasis in original) (citing *Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 569 (7th Cir. 1989)).

under the *McDonnell Douglas* burden-shifting framework." *Ingram v. D.C. Family & Child Servs. Agency*, 394 F. Supp. 3d 119, 126 (D.D.C. 2019). Under *McDonnell Douglas*, "the plaintiff has the initial burden of production to establish a prima facie case of discrimination; if she does, then the employer must articulate a legitimate, non-discriminatory reason for its action; and if it does, then the plaintiff must receive an opportunity to show that the employer's reason was a pretextual cover for discrimination." *Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 64 (D.D.C. 2016) (citing *McDonnell Douglas*, 411 U.S. at 802–805).

The D.C. Circuit has made clear however that "the prima-facie-case aspect of *McDonnell Douglas* is irrelevant when an employer has asserted a legitimate, non-discriminatory reason for its decision—as an employer almost always will do by the summary judgment stage of an employment discrimination suit." *Adeyemi*, 525 F.3d at 1226 (citations omitted). Moreover, "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). Rather, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee[?]" *Id.* (citations omitted). If a plaintiff fails to produce evidence for a reasonable jury to find that the employer's legitimate, non-discriminatory reason was not the actual reason for the employer's action, then summary judgment in favor of the employer is proper. *Id.* at 496–97. When considering whether summary judgment is warranted for the employer in an employment

discrimination case, the court considers all relevant evidence presented by the plaintiff and defendant. *See id.* at 494–95.

### 1. JHU has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

Before concluding that an employer has carried its burden under the second prong of *McDonnell Douglas*, the Court must consider:

> (1) whether the employer has "produce[d] evidence that a factfinder may consider at trial (or a summary judgment proceeding);" (2) whether that evidence is sufficient to permit a reasonable jury "to find that 'the employer's action was motivated by' a non-discriminatory reason;" (3) whether the proffered, non-discriminatory reason is "facially 'credible' in light of the proffered evidence;" and (4) whether the evidence "present[s] a 'clear and reasonably specific explanation.' "

*Kirkland v. McAleeman*, Civil Action No. 13-194 (RDM), 2019 WL 7067046, at *14 (D.D.C. Dec. 23, 2019) (quoting *Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019) (citations omitted)).

Here, the Court finds that JHU has asserted a legitimate, non-discriminatory reason for terminating Plaintiff's employment based on its dissatisfaction with her job performance and her work attendance. The record supports this justification, and nothing in the record contradicts it. Even when Ms. Scruggs was working remotely pursuant to the first accommodation, her supervisor, Ms. Veronica Donahue, indicated that Ms. Scruggs was not satisfactorily performing certain aspects of her job. On or about August 26, 2021, Ms. Donahue informed Ms. Scruggs that she needed to be on campus the following week when students were returning to campus, and she informed her that other employees were handling responsibilities that belonged to Ms. Scruggs. *See* Donahue Decl. ¶¶ 10-12. On September 3, 2021, Ms. Donahue issued a counseling email to Ms. Scruggs identifying six concerns. *Id.* ¶ 13; *see* counseling email, Def.'s Ex. 14 (explaining the six concerns, some of which reiterated concerns expressed by Ms. Donahue on August 26,

2021, namely, that other employees were responding to student inquiries that should have been handled by Ms. Scruggs).

Thereafter, as of September 3, 2021, Plaintiff was informed by Ms. Donahue that several responsibilities were being removed from her so that she could better focus on Enrollment Services, and she was assigned a different direct supervisor, Mr. David Brant. Donahue Decl. ¶¶ 14-15. Yet, Ms. Scruggs continued to fail to perform various job functions, with the effect that other employees, including Mr. Brant, were expected to perform those functions. Mr. Brant explained that while Ms. Scruggs was responsible for the then-new COVID-19 testing protocol for new students, because she was not present, Mr. Brant and Ms. Scruggs' colleagues had to assume responsibility for assisting students and escorting them to the testing location, which was disruptive to their own work. Brant Decl. ¶¶ 14-18. Furthermore, after Plaintiff's accommodation ended at the end of September 2021, her attendance was sporadic, and Mr. Brant explained that Ms. Scruggs' "frequent absences from October through November 2021 impeded her ability to contribute to [a] working group" that was "tasked with putting together the advising technology" for AAP. Brant Decl. ¶¶ 6-7.

In addition to the counseling received by Ms. Donahue, Mr. Brant counseled Ms. Scruggs about her work performance. By email to Plaintiff, Mr. Brant noted first that Ms. Donahue had issued a formal warning to Plaintiff about her performance issues, and he indicated next that Plaintiff's performance "has continued to deteriorate and negatively impact AAP's students, staff, external stakeholders, and Senior Leadership members." October 26, 2021 counseling email, Def.'s Ex. 17. Mr. Brant's email outlined seven specific concerns, including Ms. Scruggs' unplanned absences that necessitated canceling and rescheduling student appointments, and her failure to plan for student support when she was not in the office and failure to communicate with

28

students and other stakeholders, which resulted in reassignment of her duties to other staff members. *Id.* Mr. Brant noted that this October 2021 email was the "second formal warning" and that he expected "immediate improvements." *Id.*

Ultimately, it was Mr. Brant who made the decision to terminate Plaintiff's employment. Mr. Brant explained that, on or about November 4, 2021, a parent left a message about her child being in critical care, and Ms. Brant stated that, except for attempting to return the parent's call, Ms. Scruggs "took no steps to initiate proactive support for the student, including failing to access the student's emergency contact records." Brant Decl. ¶¶ 9-10. "Following this urgent student need," Plaintiff was absent the following day, followed by a weekend, and Mr. Brant "made the decision to terminate Scruggs' employment with the assistance of human resources." *Id.* ¶¶ 11-12. JHU contends that Ms. Scruggs' employment was terminated "because it needed her to perform the work of a Director of Student Success and she failed to do so [as] [s]he would not report to work as she was supposed to and when she did report to work, her work was unsatisfactory." Def.'s Mem., ECF No. 21-1, at 37.

Applying the standard set out by the D.C. Circuit, the Court agrees that the record evidence in this case supports JHU's proffer of a legitimate non-discriminatory reason for terminating Ms. Scruggs' employment. JHU's evidence is sufficient to permit a reasonable jury to find that its termination of Ms. Scruggs' employment was motivated by a non-discriminatory reason, which is facially credible considering her history of failing to adequately perform her work functions and her excessive absenteeism. Furthermore, such evidence presents a clear and reasonably specific explanation considering the progressive counseling Plaintiff received and her failure to take any action in response thereto.

29

## 2. Plaintiff Fails to Demonstrate Pretext

Plaintiff attempts briefly (and weakly) to rebut JHU's legitimate non-discriminatory reason by offering evidence to show pretext. A plaintiff can demonstrate pretext by "providing evidence from which a reasonable jury could find that the employer's proffered, lawful reasons for acting are 'unworthy of credence.'" *Jackson v. Dist. Hosp Partner, L.P.*, Civil Action No. 18-1978 (ABJ), 2022 WL 3910501, at *4 (D.D.C. Aug. 31, 2022) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000)). Showing pretext, though, "requires more than simply criticizing the employer's decisionmaking process." *Hairston v. Vance*-Cooks, 773 F.3d 266, 272 (D.C. Cir. 2014).

In this case, Plaintiff provides no evidence linking her termination to discrimination based on her disability, race, or gender.[11] Instead, Plaintiff's "evidence" of pretext relies on the following general unsupported assertions: (1) Ms. Scruggs "disputed" the six performance concerns expressed by Ms. Donahue; (2) Ms. Scruggs concedes that Mr. Brant counseled her but alleges that his claims about her performance were "false," and she notes that Ms. Peery supervised her and did not require "additional on-campus presence for completion of Plaintiff's responsibilities; and (3) Ms. Donahue treated white males better than any other group. Pl.'s Mem., No. 22-1, at 9. Addressing each allegation in brief, the Court notes that: (1) Ms. Scruggs does not explain the basis on which she contested Ms. Donahue's six concerns; rather, she noted without further explanation, in a few lines of her deposition, that she contested all of them; (2) Ms. Scruggs' statement that Mr. Brant's claims are "false" does not make them false, nor did Ms. Peery's

---

[11] The Court notes that Ms. Donahue stated that she was not aware of <u>any</u> of Plaintiff's health conditions until after the end of Ms. Scruggs' employment, Donahue Decl. ¶ 16, nor was Mr. Brant aware of Ms. Scruggs' specific health conditions underlying her requested accommodations, Brant Decl. ¶ 13. Plaintiff proffers noting to contradict these statements.

supervision of Plaintiff extend to anything other than Student Conduct matters, DSoF ¶ 69;[12] and (3) allegations that Ms. Donahue treated white men better than any other group are not supported by the record in this case, nor does Ms. Scruggs appear to have any personal knowledge regarding these allegations, nor do such allegations counter Ms. Scruggs' performance issues that were flagged by Ms. Donahue (and later, by Mr. Brant).[13]

One way for a plaintiff to prove discrimination is by proffering "better treatment of similarly situated employees outside [her] protected group . . . and the [employer's] deviation from established procedures or criteria.'" *Gulley v. District of Columbia*, 474 F. Supp. 3d 154, 167 (D.D.C. 2020) (citing *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016)). There are several factors bearing on whether someone is a comparator, including if such persons have similar job duties, and if discipline is involved, whether they were disciplined by the same supervisor and there is a similarity of offenses. *Gulley*, 474 F. Supp. 3d at 166. While Ms. Scruggs makes general allegations that Ms. Donahue subjected her to harsher consequences and treated her differently from other employees (particularly, non-white males), she does not identify any employee who was a comparator. Furthermore, while she asserts that Ms. Donahue was more open to hearing Mr. Brant's suggestions and feedback, she acknowledges that Mr. Brant was not an appropriate comparator. Pl.'s Mem., ECF No. 22-1 at 15.

Furthermore, Plaintiff's own assessment of her performance as adequate does not establish discrimination. *Spelke v. Gonzales*, 516 F. Supp. 2d 76, 80 (D.D.C. 2007) (citing *Waterhouse v. Dist. of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000)). The Court notes that Mr. Brant was

---

[12] Even if the Peery Declaration had not been stricken, the Court notes that Ms. Peery did not address Plaintiff's work performance therein.

[13] Plaintiff's personal knowledge extends only to her assertion that Ms. Donahue "consistently mispronounced Plaintiff's first name." PSoF ¶ 5.

31

Plaintiff's direct supervisor as of September 3, 2021, and just as Ms. Donahue did, Mr. Brant provided Plaintiff with specific guidance as to what improvements she needed to make in terms of her work performance. Mr. Brant indicated also that Plaintiff's sporadic attendance at work was unacceptable. After Plaintiff failed to make improvements in either her performance or her attendance, her employment was terminated.

Accordingly, the Court finds that there is no evidence to create a genuine issue of material fact as to whether JHU's legitimate, nondiscriminatory reasons for terminating Plaintiff are pretext for discrimination based on the ADA or Title VII.

### C. Retaliation Claim

An ADA retaliation claim is analyzed under the *McDonnell Douglas* three-step framework. *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005); *Elzeneiny v. District of Columbia*, 195 F. Supp. 3d 207, 225 (D.D.C. 2016). Pursuant to this framework, a plaintiff must establish three elements of a prima facie case of retaliation: (a) that she engaged in protected activity; (b) that her employer subjected her to an adverse employment action; and (c) that there is a causal link between the adverse employment action and the protected activity. *Smith*, 430 F. 3d at 455. In cases such as this, where the employer has "provided an abundance of evidence suggesting that the reason for Plaintiff's [termination of employment] was her ongoing performance deficiencies," the burden shifts back to the employee "to provide sufficient evidence that the [employer's] non-retaliatory reason was not the actual reason, and that the [employer] instead intentionally retaliated against her." *Elzeneiny* at 229 (citation omitted).

In this case, Ms. Scruggs contends that JHU retaliated against her by terminating her employment for requesting a reasonable accommodation and/or filing a complaint against Ms.

32

Donahue.[14]  As a preliminary matter, his Court has found herein that the Second Accommodation requested by Plaintiff was not a "reasonable" accommodation insofar as Ms. Scruggs job responsibilities required her to have an on-campus presence.  Ms. Scruggs' First Accommodation Request was granted, with an accommodation for remote work until the end of September 2021, with the proviso that she would be on campus when needed.  Subsequently, Ms. Scruggs requested permission to work 100% remotely through March 2022, based on her seizure disorder, but that request was denied by JHU because her position required her to interact with students, most specifically, because of the new COVID-19 protocol.  Moreover, Ms. Scruggs provided JHU with no information about her limitations in using public transportation, based on her mood disorder, and she made no alternative request for accommodations, with the result that her employment was expected to be in-person.

On September 3, 2021, while Plaintiff was working remotely under the First Accommodation, her supervisor, Ms. Donahue, noted six concerns with Plaintiff's work and work habits.  *See* September 3, 2021 counseling email, Def.'s Ex. 14.  At the same time, Ms. Donahue acknowledged being "concerned that perhaps [Ms. Scruggs and [she] were not a good match with respect to [their] supervisory relationship" and as a result thereof, she reassigned Plaintiff to report to Executive Director David Brant and she removed some responsibilities from Plaintiff.  Donahue Decl. ¶ 15; *see* September 3, 2021 counseling email, Def.'s Ex. 14 (noting that the "goal of this new reporting structure and reduced duties is to help you significantly improve your performance

---

[14] No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. 42 U.S.C. § 12203.

33

and help to make you more successful in your role as Director of Student Success and Advancement for AAP).

Ms. Scruggs submitted a complaint to JHU's OIE shortly after Ms. Donahue provided her with the counseling email and transferred her supervision. In her OIE complaint, Plaintiff alleged that Ms. Donahue discriminated and retaliated against Ms. Scruggs based on disability and harassed her based on race by intentionally mispronouncing her name. Report Form, Def.'s Ex. 19. On October 22, 2021, Plaintiff was notified by OIE that it was closing this matter. *See* October 22, 2021 email from OIE to Ms. Scruggs, Def.'s Ex. 20 (noting also that OIE had met with AAP leadership, including Ms. Donahue to provide feedback).

After Plaintiff was assigned a new supervisor, she not only continued to fail to perform the functions of her job, but she was also absent approximately three out of five days per week. At the end of October, 2021, Mr. Brant sent Ms. Scruggs a second counseling email highlighting seven "[i]ssues that continue to be problematic for AAP" and noting that she was "required and expected to make immediate improvements in [her] performance and [to] work with [Mr. Brant] should [she] need reasonable support for [her] to complete [her] duties. October 26, 2021 counseling email, Def.'s Ex. 14. Despite this second formal warning, Plaintiff's job performance and attendance did not improve.

Plaintiff's employment was ultimately terminated <u>by Mr. Brant</u>, in connection with human resources. Brant Decl. ¶ 12. Plaintiff's November 17, 2021 Termination Letter indicates that she and Mr. Brant met on November 4, 2021 to discuss Ms. Scruggs' "required onsite status and the requirements of [her] work schedule." This was after, or simultaneous with, a November 4, 2021 incident described in Mr. Brant's Declaration whereby Plaintiff "took no steps to initiate proactive support for [a] student" who was reported to be in critical care, with the result that Mr. Brant spoke

34

to the student's mother. Brant Decl. ¶¶ 9-10. The incident was followed by Ms. Scruggs being absent on November 5, followed by a weekend. *Id.* ¶ 11. Plaintiff's November 17, 2021 Termination Letter states that: "As you are unwilling or unable to report to work on campus as required, we have no choice but to end your employment." Termination Letter, Def.'s Ex. 18.

In her Opposition to JHU's Motion for Summary Judgment, Plaintiff provides no evidence that JHU's non-retaliatory reasons for terminating her employment were motivated either by her request for accommodation or by her complaint to OIE. Plaintiff proffers only that:

> Plaintiff engaged in protected activity and submitted a complaint to OIE on September 8, 2021 alleging that the University was discriminating and retaliating against her based on her disability and race. ECF No. 21-31. Plaintiff further engaged in protected activity by speaking with Defendant's Equity Compliance Investigator on September 20, 2021 and October 1, 2021. ECF No. 21-32. Defendant inexplicably closed Plaintiff's complaint on October 22, 2021. *Id.* Less than one (1) month later, Defendant terminated Plaintiff's employment on November 18, 2021.

Pl.'s Mem., ECF No. 22-1, at 17. Plaintiff's summary of her protected activity ignores the "elephant in the room"; *i.e.*, she was not adequately performing her job responsibilities, which were then shifted to other JHU employees and to her supervisor, Mr. Brant. Nor was she even reporting to work several days a week, which was detrimental to the students she was supposed to be supporting. Furthermore, despite repeated formal warnings about the need to improve her job performance, and a meeting with Mr. Brant about her attendance, the record is devoid of evidence that Ms. Scruggs took any steps whatsoever to improve her performance or her attendance. Accordingly, JHU terminated her employment. Ms. Scruggs "may not offer her own speculations and allegations to refute an employer's legitimate, non-discriminatory reasons for its decisions." *Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 22 (D.D.C. 2000) (citing *Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999)).

35

Moreover, OIE's closure of Plaintiff's complaint was by no means "inexplicable." In Ms. Scruggs' Report to OIE – which was filed _after_ Plaintiff had already been assigned a new supervisor – Plaintiff indicated that her [first] accommodation request was under review at the time the harassment started, and she requested "immediate corrective action to prevent further harassment, bullying and retaliation" by Ms. Donahue. Plaintiff's Report to OLID, Def.'s Ex. 19, at 4. In OIE's notification to Plaintiff that it was closing this matter, the Equity Compliance Investigator noted that:

> You reported that Dean Donahue harassed you on the basis of your race by intentionally mispronouncing your name, and that she discriminated and retaliated against you on the basis of disability by escalating her adverse treatment of you after you requested, and were approved for, a disability accommodation. As we discussed, based on the information collected, OIE determined that Dean Donahue's mispronunciation of your name (while discourteous, if intentional) did not rise to the level of severe, persistent or pervasive behavior that would constitute a hostile work environment, and that you were ultimately provided a remote work accommodation that was consistent with the agreement reached with the assistance of the ADA Compliance office. We concluded that any investigation by OIE would be unlikely to provide an outcome that you were seeking.

_See_ October 22, 2021 email from OIE to Ms. Scruggs, Def.'s Ex. 20.

The Court finds that Plaintiff provides no evidence linking the termination of her employment – a decision made by Mr. Brant – to the complaint she filed against Ms. Donahue, after Ms. Donahue's supervision of Plaintiff had ended. Accordingly, considering the record evidence in this case, the Court concludes that Ms. Scruggs has failed to establish a claim for retaliation because, given the evidence of her inadequate performance and poor attendance, she cannot demonstrate that retaliation was the reason for her termination. Nor has she shown any causal connection between her protected conduct and Mr. Brant's decision to terminate her employment.

## IV. CONCLUSION

Having considered all of Plaintiff's claims for failure to accommodate, discrimination, and retaliation, this Court finds that there are no genuine issues of material fact precluding summary judgment. Defendant JUH has proffered a legitimate, non-discriminatory reason for terminating Plaintiff Yashanda Scruggs' employment, which Ms. Scruggs has failed to rebut with sufficient evidence to demonstrate discriminatory pretext or retaliation. Nor is there support for Plaintiff's claim that JHU failed to provide a reasonable accommodation because Ms. Scruggs neither provided notice of her mood disorder to JHU nor did she request a reasonable accommodation. A separate order accompanies this Memorandum Opinion.

DATED: March 5, 2026

COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT COURT

37